2010 UT 32

**STATE of Utah, Plaintiff and Respondent,**

v.

**Francisco A. CANDEDO, Defendant and Petitioner.**

No. 20080183.

Supreme Court of Utah.

May 14, 2010.

---

**4.** Such claims are apparently pending in a separate action between American Skiing and Wolf

Mountain.

**1010**

Mark L. Shurtleff, Att'y Gen., Kenneth A. Bronston, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Lori J. Seppi, Salt Lake City, for defendant.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Francisco Candedo was placed on nine years of probation after pleading guilty to three felonies arising from his participation in a fraudulent investment scheme. Candedo did not object to the term of probation at sentencing. Instead, on direct appeal to the court of appeals, he challenged the legality of his probation sentence under rule 22(e) of the Utah Rules of Criminal Procedure or, alternatively, under the doctrine of exceptional circumstances. Candedo argued that his nine-year probation sentence, authorized under Utah Code section 77–18–1(10)(a)(i), violated his substantive due process rights. The court of appeals affirmed his sentence without reaching the merits by finding that his claim failed to meet the requirements of either rule 22(e) or the doctrine of exceptional circumstances.

¶ 2 On certiorari, Candedo argues that (1) the court of appeals erred in holding that his due process arguments could not be raised under either rule 22(e) or the doctrine of exceptional circumstances, and (2) the imposition of a nine-year probation term violates his right to due process. We hold that the court of appeals erred in failing to reach the merits of Candedo's constitutional claim under rule 22(e). But we nevertheless hold that Candedo's probation sentence does not violate his substantive due process rights and is therefore constitutional. Because we reach the merits of Candedo's claim under rule 22(e), we need not address the applicability of the exceptional circumstances doctrine.

1. On November 4, 2009, Candedo filed a suggestion of mootness pursuant to Utah Rule of Appellate procedure 37(a) that requires a defendant to "inform the court of any circumstances which have transpired subsequent to the filing of the appeal." Candedo did not take the position that his appeal had become moot, but he let the court know that Adult Probation and Parole removed Candedo from supervised probation and placed him on "court probation to continue to monitor the repayment of the restitution amount." State of Utah Adult Probation and Parole, *Protected*

## BACKGROUND

¶ 3 Francisco Candedo and others operated a fraudulent pyramid investment scheme that defrauded 146 Utah victims. The victims, including many elderly individuals, lost their retirement funds, their homes, their credit ratings, and their jobs. The Utah Attorney General's Office computed restitution for the victims at $3,373,060.

¶ 4 In 2005, Candedo pled guilty to three felonies: one count of securities fraud, a second-degree felony; one count of sales by an unlicensed broker-dealer or agent, a third-degree felony; and, one count of employing an unlicensed broker-dealer or agent, a third-degree felony. The district court sentenced Candedo to concurrent terms of one-to-fifteen years for the second-degree felony and zero-to-five years for each third-degree felony. Although the presentence report recommended incarceration and restitution, the court suspended Candedo's prison sentence, imposed 108 months, or nine years, of probation and ordered restitution in the amount of $3,373,060.[1] The sentencing court indicated that it ordered the lengthy probation term specifically because of the amount of restitution Candedo owed.

¶ 5 Candedo challenged the legality of his probation term on direct appeal to the court of appeals, arguing that his nine-year probation term ordered pursuant to Utah's probation statute violates substantive due process under the Utah and United States Constitutions. Because Candedo conceded that his due process claim was not preserved in the district court, he argued that the court of appeals could reach the merits of his claim under either rule 22(e) of the Utah Rules of Criminal Procedure or the doctrine of exceptional circumstances.

*Progress/Violation Report,* November 6, 2009. Because Candedo is still under court probation and is subject to contempt or reinstatement of his original sentence if he fails to remit his restitution payments, we agree that his appeal is not moot. *See State v. Nones,* 2000 UT App 211, ¶¶ 13–16, 11 P.3d 709 (holding that a trial court supervising restitution payments has the option to hold a defendant in contempt or impose a suspended jail term if the defendant fails to remit his restitution payments).

¶ 6 The court of appeals held that Candedo's claim did not meet the requirements of rule 22(e) or the exceptional circumstances doctrine. *See State v. Candedo,* 2008 UT App 4, ¶ 10, 176 P.3d 459. Candedo filed a petition for certiorari, which we granted. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(a) (2008).

## STANDARD OF REVIEW

¶ 7 "On certiorari, we review the decision of the court of appeals, not the trial court." *State v. Billsie,* 2006 UT 13, ¶ 6, 131 P.3d 239. Procedural and constitutional questions present questions of law that we review for correctness without deference to the lower court's ruling. *Chen v. Stewart,* 2004 UT 82, ¶ 25, 100 P.3d 1177.

## ANALYSIS

I. RULE 22(e) ALLOWS U.S. TO REACH THE MERITS OF CANDEDO'S CONSTITUTIONAL CLAIM

¶ 8 Candedo argues that the court of appeals should have reached the merits of his constitutional claim under rule 22(e) of the Utah Rules of Criminal Procedure. We agree.

¶ 9 Under rule 22(e), a court "may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." Utah R.Crim. P. 22(e). Rule 22(e) applies to sentences that are manifestly or patently illegal. *See State v. Telford,* 2002 UT 51, ¶ 5, 48 P.3d 228; *State v. Brooks,* 908 P.2d 856, 860 (Utah 1995). The "sweeping" language of rule 22(e) allows an appellate court to "vacate the illegal sentence without first remanding the case to the trial court, even if the matter was never raised before." *Brooks,* 908 P.2d at 860. The preservation rule does not apply "because an illegal sentence is void and, like issues of jurisdiction, [may be raised] at any time. For this reason, rule 22(e) claims must

be narrowly circumscribed to prevent abuse." *Telford,* 2002 UT 51, ¶ 5, 48 P.3d 228 (internal quotation marks and citations omitted)(alteration in original). Additionally, rule 22(e) "presupposes a valid conviction" and therefore cannot be used as a veiled attempt to challenge the underlying conviction by challenging the sentence.[2] *Brooks,* 908 P.2d at 860.

¶ 10 Based on language in *Telford,* the court of appeals held that Candedo's due process claim did not fall within the ambit of rule 22(e). *State v. Candedo,* 2008 UT App 4, ¶ 6, 176 P.3d 459. Specifically, the court of appeals determined that an illegal sentence can occur only "where either 'the sentencing court has no jurisdiction, or ... the sentence is beyond the authorized statutory range.' " *Id.* (quoting *State v. Thorkelson,* 2004 UT App 9, ¶ 15, 84 P.3d 854)(alteration in original). We disagree.

¶ 11 The court of appeals' definition of illegal sentence entirely precludes allegations of constitutional violations as a basis for challenging a sentence. This narrow definition is contrary to our holding in *Telford,* where we used rule 22(e) to reach the petitioner's claim that his sentence was unconstitutional. Although we rejected Telford's separation of powers and Eighth Amendment challenges to his sentence, we reached and considered the merits of those challenges under rule 22(e). *Telford,* 2002 UT 51, ¶¶ 3–4, 48 P.3d 228. We refused to consider Telford's constitutional arguments only where he failed to raise an "articulable basis for attacking his sentence." *Id.* ¶ 6. Because an illegal sentence under rule 22(e) includes constitutional violations, an appellate court must allow a petitioner to raise constitutional, as well as jurisdictional and statutory challenges, to his or her sentence under rule 22(e).

¶ 12 This conclusion is consistent with our recent decision in *State v. Yazzie,* where we adopted the following definition of illegal sentence within the context of rule 22(e):

---

**2.** Rule 22(c) is not properly invoked for "ordinary or 'run-of-the mill' errors" that are appropriately reviewed under rule 4(a) of the Utah Rules of Appellate Procedure. *State v. Thorkelson,* 2004 UT App 9, ¶ 15, 84 P.3d 854. Such errors may include "a trial court's failure to consider requisite statutory factors before impos-

ing consecutive sentences [and] ... a denial of due process resulting from a trial court's failure to consider mitigating evidence." *State v. Garner,* 2008 UT App 32, ¶ 17, 177 P.3d 637 (citing *Thorkelson,* 2004 UT App 9, ¶¶ 11–12, 84 P.3d 854).

"[An illegal sentence is] one which is ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction did not authorize."

2009 UT 14, ¶ 13, 203 P.3d 984 (quoting *United States v. Dougherty,* 106 F.3d 1514, 1515 (10th Cir.1997)) (alteration in original). In *Yazzie,* this Court determined that the defendant's sentence was illegal "because it did not comply with the statutory requirement to determine concurrent or consecutive sentencing at the time of final judgment." *Id.* ¶ 12. The judge determined at a probation revocation hearing that the defendant's sentences should run consecutively with his previously imposed sentences. *Id.* ¶ 10. However, pursuant to statute, the determination of concurrent or consecutive sentencing must take place at the time of final judgment. *See id.* ¶ 11.

¶ 13 While we used the definition of illegal sentence in *Yazzie* to address the failure of a sentencing court to comply with express statutory provisions, the same definition also encompasses Candedo's alleged constitutional violations. Specifically, if an offender's sentence is unconstitutional, the sentence is not authorized by the "judgment of conviction," and is therefore illegal.

■■■ ¶ 14 The State contends that Candedo fails to address the threshold question of whether a nine-year probation sentence is "patently" or "manifestly" illegal. But when a petitioner raises an articulable basis for challenging the constitutionality of a sentence, the court may reach the issue of whether the sentence is "patently" or "manifestly" illegal after considering the merits of the claim, not beforehand. We therefore hold that the court of appeals erred in failing to reach the merits of Candedo's substantive due process challenge because the definition of illegal sentence under rule 22(e) is sufficiently broad to include constitutional viola-

tions that threaten the validity of the sentence. This holding allows us to reach the merits of Candedo's claim and thus we need not address the applicability of the exceptional circumstances doctrine. We now turn to the merits of Candedo's due process claim.

## II. UTAH'S PROBATION STATUTE IS CONSTITUTIONAL AND CANDEDO'S SUBSTANTIVE DUE PROCESS RIGHTS WERE NOT VIOLATED

■■■ ¶ 15 Utah's probation statute "authorizes a court to impose probation as a sentencing alternative, but nowhere does it provide a limitation on the length of probation a court may set." *State v. Wallace,* 2006 UT 86, ¶ 16, 150 P.3d 540. Indeed, as interpreted by this court in *Wallace,*[3] a sentencing court has full discretion to determine the length of a defendant's probation under Utah's probation statute. *Id.* ¶¶ 12–16. Candedo argues that Utah's probation statute, as interpreted by *Wallace* and as applied in this case, violates his substantive due process rights. Specifically, Candedo argues that he has a fundamental right to liberty once the purposes of probation are completed. He asserts that the only purpose of probation is rehabilitation, which can only be accomplished, if at all, in a relatively short period of time. He accordingly reasons that the imposition of a nine-year term of probation violated his substantive due process rights. We begin by addressing whether Candedo's substantive due process claim implicates a fundamental right, thus triggering a heightened degree of scrutiny, or whether rational basis review applies. After determining that Candedo's claim does not implicate a fundamental right, we address the merits of his substantive due process claim under rational basis review.

### A. Because Candedo's Claim Does Not Implicate a Fundamental Right, Rational Basis Review Applies

■■■ ¶ 16 When undertaking a substantive due process analysis under both ar-

---

**3.** Candedo's brief dedicates a substantial amount of space to challenging our interpretation of Utah's probation statute in *Wallace.* Since the *Wallace* decision was issued in 2006, the legisla-

ture has neither modified nor altered the language in Utah's probation statute. We therefore see no basis for revisiting our ruling in that case.

ticle I, section 7 of the Utah Constitution and the Fourteenth Amendment of the United States Constitution, this court applies a rational basis test unless the governmental action implicates a fundamental right or interest. *See Judd ex rel. Montgomery v. Drezga,* 2004 UT 91, ¶ 30, 103 P.3d 135 ("Generally, we apply a rational basis test in substantive due process cases. However, this rational basis test is replaced by a more stringent test in cases where the rights impacted by the legislation are deemed to be 'fundamental.'" (internal citations omitted)). In the criminal sentencing context, petitioners like Candedo often argue "that the right to be free from deprivations of liberty as a result of arbitrary sentences is fundamental" and that the statute authorizing the sentence is subject to strict scrutiny. *Chapman v. United States,* 500 U.S. 453, 464–65, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). However, the United States Supreme Court has explained that

> we have never subjected the criminal process to [that] sort of truncated analysis.... Every person has a fundamental right to liberty in the sense that the Government may not punish him unless and until it proves his guilt beyond a reasonable doubt at a criminal trial conducted in accordance with the relevant constitutional guarantees. But a person who *has* been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment.

*Id.* at 465, 111 S.Ct. 1919.

¶ 17 Where a defendant has been found guilty, and no arbitrary distinction in sentencing is present, courts apply a rational basis standard in reviewing sentencing statutes. *Id.; see also United States v. Angelos,* 345 F.Supp.2d 1227, 1235–36 (D.Utah 2004), *aff'd,* 433 F.3d 738 (10th Cir.2006) (applying a rational basis review to petitioner's claim that sentencing guidelines violated equal protection and due process); *United States v. Bredy,* 209 F.3d 1193, 1197 (10th Cir.

2000)("Due process requires only that a sentencing scheme be rational."); *United States v. Eaton,* 2000 WL 293789 at *3, 2000 U.S.App. LEXIS 4496 at *10 (10th Cir. Mar. 21, 2000) (holding the same); *United States v. Perez–Chavez,* 422 F.Supp.2d 1255, 1265 (D.Utah 2005) (" '[U]nless a law infringes upon a fundamental right or classifies along suspect lines such as race, the court's review is limited to determining whether there is a rational basis for the law.' " (quoting *Angelos,* 345 F.Supp.2d at 1235–36)). Under this type of review, the court determines whether the statute or its application "is rationally related to a legitimate state interest." *Gardner v. Bd. of County Comm'rs,* 2008 UT 6, ¶ 33, 178 P.3d 893.

¶ 18 Candedo does not argue that his nine-year probation sentence was based on an arbitrary distinction such as race or that he was treated differently from other similarly situated defendants. Instead, Candedo asserts that the only purpose of probation is rehabilitation and that its rehabilitative purpose, if achieved at all, will be achieved within a relatively short period of time. We disagree with both of these premises. Even were we to accept them, however, they do not give rise to the conclusion that Candedo's probation sentence implicates a fundamental right because a defendant's liberty interest may be infringed by a rational criminal sentence once he has been found guilty as long as the sentence is not cruel or unusual, arbitrary, or discriminatory. *See Chapman,* 500 U.S. at 465, 111 S.Ct. 1919. Candedo is admittedly guilty of the crimes committed and thus a court is authorized to impose a sentence pursuant to the terms of a rational sentencing statute. Because no fundamental right is implicated, we will apply a rational basis standard to our review of the probation statute and its application in this case.

*B. Candedo's Substantive Due Process Claim Fails Because the Probation Statute Is Rationally Related to a Legitimate State Interest and His Sentence Was Not Arbitrary*

¶ 19 "When a fundamental right is not at issue, a statute will not violate substantive due process if it is rationally

related to a legitimate state interest." *Gardner*, 2008 UT 6, ¶ 33, 178 P.3d 893. Further, our rational basis analysis is limited "to determin[ing] whether the legislature overstepped the bounds of its constitutional authority in enacting [the statute at issue], not whether it made wise policy in doing so." *Judd*, 2004 UT 91, ¶ 15, 103 P.3d 135.

¶ 20 Candedo argues that Utah's probation statute is not rationally related to the legislatively-stated purpose of probation, which is rehabilitation. Specifically, Candedo asserts that rehabilitation, if achieved at all, will be achieved within a relatively short period of time—five years or less. Thus, lengthy probation terms, such as the one imposed in this case, are not rationally related to a valid legislative purpose and therefore violate due process.

¶ 21 We are unpersuaded that the only legitimate and legislatively stated purpose of Utah's probation statute is rehabilitation of the offender who is placed on probation.[4] Our case law recognizes numerous legitimate purposes of probation, including rehabilitation, *State v. Spiers*, 12 Utah 2d 14, 361 P.2d 509, 511 (1961), as well as protection of society, deterrence, punishment, and restitution, among others. *See State v. Rhodes*, 818 P.2d 1048, 1051 (Utah Ct.App.1991). Moreover, the very mechanism of restitution is made more effective when the defendant is on probation. To address these legitimate state interests, Utah's probation statute authorizes the court to impose certain conditions of probation, including to "make restitution or reparation to the victim or victims with interest in accordance with Title 77, Chapter 38a, Crime Victims Restitution Act; and comply with other terms and conditions the court considers appropriate." Utah Code Ann. § 77–18–1(8)(a)(ix)–(x) (2008). We conclude that Utah's probation statute generally, as well as the term of probation to which Candedo was sentenced, are rationally related to the state's legitimate interest in making victims whole through payment of restitution in

addition to the other stated needs for probation.

¶ 22 We want to be clear that an absence of maximum time limits in the probation statute does not raise the same constitutional concerns as those raised in *Kansas v. Hendricks* regarding civil commitment statutes. 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). There are several fundamental differences between the Utah probation statute and civil commitment statutes like the one at issue in *Hendricks*. First, defendants who are civilly committed have not been found guilty of a crime, but rather are detained based on mental incapacitation for an indefinite period of time. *See Hendricks*, 521 U.S. at 358, 117 S.Ct. 2072 (discussing various state statutes that allow civil commitment for mentally ill sex offenders). The Kansas civil commitment statute at issue in *Hendricks* applies to:

> (1) a presently confined person who ... has been convicted of a sexually violent offense and is scheduled for release; (2) a person who has been charged with a sexually violent offense but has been found incompetent to stand trial; (3) a person who has been found not guilty by reason of insanity of a sexually violent offense; and (4) a person found not guilty of a sexually violent offense because of a mental disease or defect.

*Id.* at 352, 117 S.Ct. 2072 (internal quotation marks omitted). In contrast, those sentenced under the Utah probation statute *have* been found guilty after a trial or a proceeding consistent with due process and are not scheduled for release. Second, as recognized in *Hendricks*, civilly committed defendants should be afforded incremental monitoring to ensure they are not detained longer than necessary to overcome their mental incapacitation. *Id.* at 364, 117 S.Ct. 2072. However, defendants sentenced under the Utah probation statute must serve the duration of the probation sentence imposed and are not held under probation indefinitely, but only as long as lawfully mandated by a

4. We have scoured Utah's probation statute, including the specific provisions cited by Candedo, and are unable to find any indication that rehabilitation is the "legislatively-stated purpose of probation" as Candedo asserts. While our case law certainly indicates that rehabilitation is a significant objective of probation, the statute itself gives no explicit indication of such legislative intent.

trial court after a determination of guilt. Utah Code Ann. §§ 77–18–1(2)(a) and 77–18–1(10)(a)(i). It is therefore not necessary to impose additional incremental monitoring for defendants sentenced to probation.

¶ 23 Finally, while we recognize the potential for a trial judge to arbitrarily impose an absurdly long probation period compared to the severity of the crime committed, these concerns are not present in Candedo's case. The court was authorized to sentence Candedo to a fifteen-year prison sentence, but instead imposed the nine-year probation sentence and ordered restitution to the victims of his fraud, a far less severe sentence. We can envision a case where a defendant could successfully challenge a probation sentence that is truly arbitrary or discriminatory under the due process clause or prove that the probation statute is cruel and unusual, but such a case is not before us now.

¶ 24 Under a rational basis standard of review, a statute will meet the requirements of due process "if it has 'a reasonable relation to a proper legislative purpose, and [is] neither arbitrary nor discriminatory.'" *Tindley v. Salt Lake City Sch. Dist.*, 2005 UT 30, ¶ 29, 116 P.3d 295 (quoting *Condemarin v. University Hosp.*, 775 P.2d 348, 356 (Utah 1989)) (alternation in original). None of the concerns about potential arbitrary sentences are present in this case because Candedo's nine-year probation term is shorter than the fifteen-year prison sentence he could have received under the statutory sentencing scheme. Additionally, there is no evidence that the sentencing judge treated Candedo differently from other defendants on account of race or other suspect classifications or discriminated against him in any way. Finally Candedo does not make the argument that his sentence was cruel and unusual in violation of the Eighth Amendment of the United States Constitution or article I section 9 of the Utah Constitution. In short, Candedo's constitutional challenge to his sentence fails.

### CONCLUSION

¶ 25 We hold that the court of appeals erred by refusing to reach the merits of Candedo's constitutional claim under rule 22(e). Specifically, the court of appeals failed to properly construe an "illegal sentence" to include constitutional violations. Courts must consider constitutional as well as statutory and jurisdictional challenges to sentences under rule 22(e). But we do not find that Utah's probation statute violates due process because the statute is rationally related to the legitimate state interest in restitution, among other interests. Accordingly, Candedo's constitutional challenge to the imposition of his nine-year probationary term under Utah's probation statute fails. We therefore affirm the district court's decision to order restitution and a nine-year probationary term.

¶ 26 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS and Justice NEHRING concur in Justice PARRISH's opinion.