2017 UT App 53

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL JOHN EDGAR,
Appellant.

Opinion
No. 20150597-CA
Filed March 23, 2017

Fourth District Court, Provo Department
The Honorable Lynn W. Davis
No. 141400828

Emily Adams, Attorney for Appellant

Sean D. Reyes and Lindsey L. Wheeler, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN and DAVID N. MORTENSEN
concurred.

VOROS, Judge:

¶1    Michael John Edgar appeals his convictions for various drug offenses arising from a traffic stop. He contends that his trial counsel performed ineffectively in not challenging the length of his detention. Specifically, he argues that the officers on the scene unduly prolonged the traffic stop without reasonable suspicion that drugs were in the car—in effect slow-walking the business of the stop to buy time for a drug-sniffing dog to arrive. We affirm.

BACKGROUND

¶2    On March 15, 2014 police pulled Edgar over for a traffic violation at 7:35 p.m. and asked for his license, insurance, and registration. The responding officer noticed that Edgar's pupils were constricted, his voice raspy, his hands shaky. The officer further noticed that Edgar had a hard time getting his license out of his wallet and that Edgar's facial features "appeared to be loose" and "relaxed." At 7:39 the responding officer called for backup to perform a DUI investigation and for a canine unit.

¶3    At 7:44 the backup officer arrived; he questioned Edgar until 7:46. The backup officer also noticed that Edgar's voice was "very raspy" and that "he appeared to be very nervous, he was looking around," and he was "very distracted." Both officers then left Edgar's car to assist some pedestrians on the sidewalk for about one minute. The responding officer then moved his patrol car behind the backup officer so that the backup officer could capture the field sobriety test on his dash camera. The officers returned to Edgar's car at 7:50 and explained to him why they believed they needed to conduct field sobriety tests.

¶4    At 7:52 the canine unit arrived and the responding officer briefed the dog handler on the situation. At 7:55 the dog handler asked Edgar to step out of his car so the dog could perform the sniff. The dog sniff took approximately two minutes; the dog alerted on the passenger and driver side doors.

¶5    At 7:57 the backup officer began the field sobriety tests; they ended at 8:01. The officers searched the car and found drugs, drug paraphernalia, and a hatchet. The officers arrested Edgar, searched him, and found more drugs.

¶6    A jury convicted Edgar of two counts of possession or use of a controlled substance, second degree felonies; use or possession of drug paraphernalia, a class A misdemeanor; and unlawful possession of a dangerous weapon, a class A misdemeanor.

ISSUE AND STANDARD OF REVIEW

¶7    Edgar contends that his attorney was ineffective for not moving to suppress the evidence found pursuant to an unconstitutionally prolonged traffic stop. Specifically, Edgar argues that his counsel should have argued that the police unconstitutionally prolonged the detention "from the time they formed reasonable suspicion that Edgar was driving impaired until the time they performed field sobriety tests" in order for the drug-sniffing dog to arrive.

¶8    "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

ANALYSIS

¶9    To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Nelson*, 2015 UT 62, ¶ 12, 355 P.3d 1031. To demonstrate prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Additionally, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697; *see also Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182 ("Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [the defendant's] claims under either prong.").

¶10    "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Consequently, to "establish a claim of ineffectiveness based on an oversight or misreading of law, a defendant bears the burden of demonstrating why, on the basis of the law in effect at the time of trial, his or her trial counsel's performance was deficient." *State v. Dunn*, 850 P.2d 1201, 1228 (Utah 1993). Counsel "cannot be faulted for failing to advance a novel legal theory which has never been accepted by the pertinent courts." *State v. Love*, 2014 UT App 175, ¶ 7, 332 P.3d 383 (citation and internal quotation marks omitted).

¶11 The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "[S]topping an automobile and detaining its occupants constitutes a 'seizure'" within the meaning of the Fourth Amendment even where "the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). However, "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (citation and internal quotation marks omitted). "And in determining whether the seizure and search were 'unreasonable,'" we make a dual inquiry. *Id.* at 19–20. First we examine "whether the officer's action was justified at its inception"; then we examine whether the officer's action "was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 20.

¶12 During a lawful traffic stop, the "temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). "If, during the scope of the traffic stop, the officer forms new reasonable articulable suspicion of criminal activity, the officer may also expediently investigate his new

suspicion." *State v. Baker*, 2010 UT 18, ¶ 13, 229 P.3d 650 (citing *Johnson*, 555 U.S. at 332–33).

¶13    The Supreme Court has held that "a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405 (2005)). However, the Fourth Amendment does not allow "a dog sniff conducted after completion of a traffic stop." *Id.* Accordingly, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* (alterations in original) (quoting *Caballes*, 543 U.S. at 407). And if "an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission.'" *Id.* at 1616 (alteration in original) (quoting *Caballes*, 543 U.S. at 407). However, independent reasonable suspicion of criminal activity may justify detaining a suspect beyond completion of the traffic infraction for the purpose of conducting a dog sniff. *Id.*

¶14    Here, Edgar concedes both that the officer had reasonable suspicion to pull him over and that, based on the officer's observations during the stop, the officer had reasonable suspicion that Edgar was drug-impaired. At that point, the Fourth Amendment requires officers to complete their traffic-based inquiries expeditiously. However, Edgar contends that, rather than acting expeditiously to complete their inquiries, the officers dragged their feet in performing field sobriety tests until the drug-sniffing dog arrived. This delay, Edgar maintains, violated Fourth Amendment standards. And he argues that because "the impermissibility of prolonging a traffic detention without reasonable suspicion was well-established in several Utah cases before Edgar's trial began," his trial counsel "should

have been aware of these precedents and their application to this case."

¶15    The State responds that the officers did not unduly prolong the stop pending the arrival of the drug dog but acted with appropriate diligence to confirm or dispel their suspicion that Edgar was drug-impaired. In the alternative, the State argues that in any event the officers did not prolong Edgar's detention without reasonable suspicion—that the officer's observation of Edgar's apparently drug-impaired state supported reasonable suspicion that Edgar might be transporting drugs. The State maintains that this reasonable suspicion allowed the officers to temporarily continue to detain Edgar until the drug dog arrived to investigate the possibility that Edgar's car contained drugs. In response, Edgar denies that the officer's observations of his apparently drug-impaired state supported reasonable suspicion that would permit them to pursue the possibility that he had drugs in the car. For that they required the dog sniff—hence the officers' need to slow-walk the investigation of his impairment, including the field sobriety tests.

¶16    We agree with the State that Edgar's counsel did not perform deficiently under the then-current state of the law. Edgar "bears the burden of demonstrating why, on the basis of the law in effect at the time of trial, his or her trial counsel's performance was deficient." *See State v. Dunn*, 850 P.2d 1201, 1228 (Utah 1993). Edgar is correct that "the impermissibility of prolonging a traffic detention without reasonable suspicion was well-established in several Utah cases before Edgar's trial began." What was not well-established, though—and still is not—was that evidence of drug impairment does not support a reasonable suspicion that drugs were in the vehicle. The law on this issue is not settled in Utah, and non-Utah case law supports the proposition that driving while impaired may support a reasonable suspicion that the driver is transporting contraband in the vehicle. Because Edgar cannot demonstrate that the law in effect at the time of trial supports his contrary proposition, his

claim of ineffective assistance of counsel for failure to file a motion to suppress on that ground fails.

¶17 Edgar has identified no controlling case law. Our supreme court has held that the presence of drug paraphernalia in a defendant's car, "in addition to the driver's apparent impairment, gave rise to reasonable suspicion that [the defendant] was using or possessed illegal drugs." *State v. Simons*, 2013 UT 3, ¶ 23, 296 P.3d 721. But our supreme court has not resolved whether evidence of drug impairment alone supports reasonable suspicion justifying further investigation. Judicial decisions from other jurisdictions suggest that the appearance of drug impairment, without more, may support reasonable suspicion that a driver has drugs in the car. *See, e.g.*, *United States v. Donnelly*, 475 F.3d 946, 952–53 (8th Cir. 2007) (holding that bloodshot, glazed-over eyes, apparent nervousness, and other signs of impairment, combined with the absence of alcohol-based impairment, "formed the basis for a reasonable suspicion that [the defendant] may have been transporting and using drugs"); *United States v. Neeman*, No. 99-3666, 2000 WL 489581, at *1 (8th Cir. Apr. 26, 2000) (per curiam) (holding that red, watery eyes provided reasonable suspicion to search a defendant's vehicle for drugs); *State v. Kaleohano*, 56 P.3d 138, 148 (Haw. 2002) (holding that when an officer failed to detect an odor of alcohol emanating from the driver's person, it was reasonable for him to infer that the driver's impairment could be drug-related and that the driver's vehicle might contain drugs); *People v. Redding*, No. 4-10-0263, 2011 WL 10481819, at *5 (Ill. App. Ct. Oct. 12, 2011) (holding that evidence that the defendant's eyes were glassy and bloodshot and did not dilate when the officer shined her light into them, combined with knowledge of a prior drug offense gave "rise to the reasonable inference defendant was operating a motor vehicle while under the influence of a drug"); *Taylor v. Commonwealth*, No. 2015-CA-000337-MR, 2016 WL 3574606, at *2 (Ky. Ct. App. June 24, 2016) (holding that falling asleep behind the steering wheel of a car, combined with other signs of impairment, gave rise to "a reasonable suspicion that [the defendant] was driving under the influence of drugs or

alcohol, and consequently, a reasonable suspicion that the vehicle harbored evidence of the crime of arrest"); *State v. Cook*, 83 So. 3d 1259, 1260 (La. Ct. App. 2012) (holding that the "observed impairment of the driver . . . while clearly involving alcohol, raises the considerable possibility for the involvement of other drugs used by the defendant," and it was "therefore reasonable to believe that evidence of the crime of arrest . . . would be located in the vehicle"); *State v. Malmquist*, No. A14-2017, 2015 WL 7356579, at *3 (Minn. Ct. App. Nov. 23, 2015), (holding that because the defendant admitted to using drugs the previous day and exhibited signs of impairment that suggested recent drug use, the deputies had reasonable suspicion to suspect that his vehicle might contain drugs or drug paraphernalia).

¶18　We cannot conclude that Edgar's trial counsel was ineffective for not filing a motion to suppress based on an unresolved proposition of law; "counsel cannot be faulted for failing to advance a novel legal theory which has never been accepted by the pertinent courts." *See State v. Love*, 2014 UT App 175, ¶ 7, 332 P.3d 383 (alteration, citation, and internal quotation marks omitted).

¶19　Edgar thus cannot satisfy "the burden of demonstrating why, on the basis of the law in effect at the time of trial, his or her trial counsel's performance was deficient." *See Dunn*, 850 P.2d at 1228. Accordingly, he cannot show that his counsel's performance was deficient, and his claim for ineffective assistance of counsel necessarily fails. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

CONCLUSION

¶20　For the foregoing reasons, the judgment of the trial court is affirmed.

————————